UNITED STATE DISTRICT COURT
DISTRICT OF MAINE

---

**ROXANNE JOY**

**PLAINTIFF**

**v.**                                                                                    **CIVIL NO.**

**RUSHMORE LOAN MANAGEMENT SERVICES**

**DEFENDANT**

---

**COMPLAINT**
**Request for Jury**

## I.   INTRODUCTION

This is an action for actual and statutory damages brought by Roxanne Joy, an individual consumer, against Rushmore Loan Management Services for repeated attempts to collect on a mortgage loan debt after Ms. Joy and the mortgagee entered into a Consented Judgment of Foreclosure and Sale with Waiver of Deficiency Balance and after the redemption period had expired. The Plaintiff brings claims for Rushmore's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter ''FDCPA'') and the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §11001 *et seq*., (hereinafter ''ME FDCPA'') which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices and for violation of the Maine Consumer Credit Code, 9-A M.R.S. §9-403(G).

## II.   JURISDICATION AND VENUE

1. The jurisdiction of this Court is conferred by 28 U.S.C. §1331 and 28 U.S.C. §1367.

1

2. Venue is appropriate inasmuch as the property securing the mortgage loan is located in York County, Maine at 6 Running Brook Drive, Sanford, Maine 04073 and Ms. Joy is a resident of York County. Venue is also proper in this Court because the Defendant systematically and continuously transacts business in this county and State and the causes of action set forth in this Complaint, in part, arose in this county.

### III.   PARTIES

3. Plaintiff Roxanne Joy is a natural person residing in Alfred, ME.

4. Upon information and belief, Defendant Rushmore Loan Management Services ("Rushmore") is a limited liability company incorporated in Delaware.

5. Upon information and belief, as of September 30, 2015, Rushmore took over servicing of the subject mortgage loan from Beneficial Maine, Inc.

6. Upon information and belief, Rushmore was servicing the subject loan on behalf of Beneficial Maine, Inc. until October 23, 2015 and then on behalf of Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity, but solely as trustee for the RMAC Trust, Series 2015-5T ("Trust").

7. Upon acquiring the servicing rights of Ms. Joy's mortgage loan, Rushmore treated the loan as if it were in default.

8. Rushmore engages in the business of attempting to collect debts in this state.

9. Rushmore regularly engages in the enforcement of security interests securing debts.

10. Rushmore collects debts using the mails and telephone, and Rushmore regularly attempts to collect debts alleged to be due another.

11. Defendant Rushmore is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), and ME FDCPA 32 M.R.S.A. §11002(6) and 11003(7)(C).

## IV.   FACTS

12. Roxanne Joy is a consumer who lives in Alfred, Maine.

13. On or about May 22, 2008, Ms. Joy executed and delivered to Beneficial Maine Inc. a certain promissory note (the "Note") in the original principal amount of $124,946.70.

14. To secure the Note, on May 22, 2008, Ms. Joy executed and delivered to Beneficial Maine, Inc., a certain real property located in Sanford, York County, Maine which Mortgage was recorded in the York County Registry of Deeds in Book 15429 at Page 35.

15. The Note and Mortgage are hereinafter collectively referred to as the "loan" or "mortgage loan."

16. Upon information and belief, the mortgage loan was assigned to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity, but solely as trustee for the RMAC Trust, Series 2015-5T OneWest Bank, FSB on or around October 23, 2015.

17. Ms. Joy lived in the property for 17 years, raising her two daughters in the home.

18. Ms. Joy fell on difficult financial times and tried to save the home through a loan modification but was not offered an affordable option.

19. Beneficial Maine Inc. filed a Complaint for Foreclosure by Civil Action on or around November 17, 2013 captioned *Beneficial Maine Inc. v. Roxanne Joy*, State of Maine, District Court Springvale, Docket No. SPRDC-RE-2014-301.

20. Ms. Joy went through the Forclosure Diversion Program pro se in an attempt to obtain a loan modification. The only program available through Beneficial Maine Inc. required Ms. Joy to provide a large down payment which she could not afford.

21. Thereafter, Ms. Joy neogatiated a CONSENTED JUDGMENT OF FORECLOSURE AND SALE WITH WAIVER OF DEFICIENCY ("Consent Judgment") which the Court entered on June 16, 2015.  A true and accurate copy of the Consent Judgment is attached hereto as Exhibit 1 .

22. The Judgment was recorded in the Oxford County Registry of Deeds on January 26, 2016 at Bk 17175, Pg. 138-141.

23. The Consent Judgment stated that the proceeds of the sale of the property would be dispersed first to Beneficial Maine Inc. and then to Ms. Joy and that "No writ of execution for any deficiency shall issue against Roxanne Joy."  *See* Exhibit 1 .

24. As a result of the Consent Judgment, Rushmore could only collect any monies alleged owed from the sale of the property.

25. Ms. Joy believed this meant she would not be liable for any money on the loan.

26. The parties negotiated a 135-day period of redemption as part of the Consent Judgment. *See* Exhibit 1.

27. Ms. Joy did not redeem the property and no appeal of the Consent Judgment was taken by any party. *See* Exhibit 1.

28. Ms. Joy vacated the property in October 2015.

29. The 135-day redemption period expired October 29, 2015.

30. Upon expiration of the redemption period, Ms. Joy no longer had any ownerhip interest in the property and title reverted to the mortgagee, the Trust.

31. Ms. Joy believed everything was finally over and she would not have the mortgage debt and house hanging over her head any longer.

32. Moving out of the home was very emotional for Ms. Joy as that is where she raised her girls and also where her daughters brought their children to visit her. The family gathered at the home for special occasions and she had a lot of memories in the home. Her daughters had also lived there with her off and on over the years because there was plenty of room.

33. Explaining to her dauthers that she had lost the house filled her with shame, guilt, and sadness. She had wanted to keep the house to give to her daughters.

34. When she finally had to leave her home, she was determined to make a fresh start and put the past behind her. She found a fixer-upper home to buy through owner financing and moved in.

35. Almost immediately, Rushmore sent Ms. Joy a statement dted October 16, 2015 alleging a "**TOTAL AMOUNT OF YOUR DEBT**" of $197,903.39 and a monthly payment amount of $1,657.67. Rushmore further identified itself as a "Debt Collector." A true and accurate copy of the letter is attached hereto as Exhibit 2 and is incorporated by reference herein.

36. In a letter dated October 23, 2015 from Rushmore to Ms. Joy, Rushmore alerted Ms. Joy of the transfer of servicing from Beneficial Maine Inc. to Rushmore. A true and accurate copy of the letter is attached hereto as Exhibit 3 and is incorporated by reference herein.

37. In a monthly statement dated October 28, 2015, Rushmore alleged a "**TOTAL AMOUNT DUE**" OF $92,868.28, a "**Regular Monthly Payment**" of $1,657.67 and and "Overdue Payment" of $91,171.85. The statement included a "Delinquency Notice" and listed all the alleged past due payments. A payment coupon was attached with the following "**Due By 10/28/2015: $92,868.28**." At the top of the letter, Rushmore stated it

is a "Debt Collector who is attempting to collect a debt." A true and accurate copy of the statement is attached hereto as Exhibit 4 and is incorporated by reference herein.

38. Ms. Joy felt anxious and afraid that Rushmore thought she actually owed all this money. She hoped it was a mistake and Rushmore would not send any more such notices.

39. In a letter dated Novmeber 13, 2015, Rushmore again notified Ms. Joy that they were the current servicer of the loan and that as long as she continued to make her mortgage payment on time, they would report her as current to the credit bureaus. If she did not, "negative information may be reported to the credit bureaus." A true and accurate copy of the letter is attached hereto as Exhibit 5 and is incorporated by reference herein.

40. In a monthly statement dated November 28, 2015 , Rushmore alleged a "**TOTAL AMOUNT DUE**" OF $94,525.95, a "**Regular Monthly Payment**" of $1,657.67 and an "Overdue Payment" of $92,829.52. The statement included a "Delinquency Notice" and listed all the alleged past due payments. A payment coupon was attached with the following "**Due By 10/28/2015: $94,525.95**." At the top of the letter, Rushmore stated it is a "Debt Collector who is attempting to collect a debt." A true and accurate copy of the statement is attached hereto as Exhibit 6 and is incorporated by reference herein.

41. In a letter dated December 3, 2015 from Rushmore to Ms. Joy, Rushmore offered several foreclosure prevention options to Ms. Joy including "Consent of Judgment" making it clear they were not following the Court's June 16, 2015 Order. A true and accurate copy of the letter is attached hereto as Exhibit 7 and is incorporated by reference herein.

42. In a monthly statement dated December 14, 2015, Rushmore alleged a "**TOTAL AMOUNT DUE**" OF $96,193.62, a "**Regular Monthly Payment**" of $1,657.67 and an "Overdue Payment" of $94,487.19. The statement included a "Delinquency Notice" and

listed all the alleged past due payments. A payment coupon was attached with the following "**Due By 10/28/2015: $96,193.62**." At the top of the letter, Rushmore stated it is a "Debt Collector who is attempting to collect a debt." A true and accurate copy of the statement is attached hereto as Exhibit 8 and is incorporated by reference herein.

43. Ms. Joy began to worry and wonder if the Judgment did not go through for some reason and she really owed over $95,000 to Rushmore. She became very anxious and concerned that somehow Rushmore might try to take her new home.

44. In a letter dated December 22, 2015 from Rushmore to Ms. Joy, Rushmore again offered to explore home retention and loss mitigation options with Ms. Joy, again referencing a Consent to Judgment as an option. A true and accurate copy of the letter is attached hereto as Exhibit 9 and is incorporated by reference herein.

45. In a monthly statement dated January 28, 2016, Rushmore alleged a "**TOTAL AMOUNT DUE**" OF $97,861.29, a "**Regular Monthly Payment**" of $1,657.67 and an "Overdue Payment" of $96,144.86. The statement included a "Delinquency Notice" and listed all the alleged past due payments. A payment coupon was attached with the following "**Due By 10/28/2015: $**97,861.29." At the top of the letter, Rushmore stated it is a "Debt Collector who is attempting to collect a debt." A true and accurate copy of the statement is attached hereto as Exhibit 10 and is incorporated by reference herein.

46. Ms. Joy panicked at the increasing balance each month and at the thought she might owe this money. She also became very angry at Rushmore for not honoring the Court's Judgment.

47. Ms. Joy received other notices from Rushmore but did not retain them all.

48. Ms. Joy works as a caregiver for developmentally disabled adults and she loves her clients. Her usual upbeat demeanor became flat and depressed around her clients because of the Rushmore notices. Her clients noticed she was not her usual self and when they asked why, Ms. Joy would feel guilty and upset that she was letting them down. She felt that she could not give her clients what they deserved and needed from her because she was so upset about the collection notices. She felt like she was not doing her job and it tore away at her.

49. Ms. Joy also stopped going out as much, visiting her grandchildren, or having them over to her house. She had to take time off from work to deal with the depression and regroup so she could be present for her clients and family. Unfortunately she could not get professional help due to her lack of health insurance. Each day, she feared finding another statement from Rushmore in the mailbox.

50. Ms. Joy became irritated and impatient with others because the Rushmore letters upset her so much. She has not taken any weekend trips as she used to, has not eaten out or gone to the movies since the letters started because she is afraid that by some chance she may owe the money. All of this has led Ms. Joy to feel guilty for not being able to give her clients and family 100%.

51. On April 7, 2016, Ms. Joy, through counsel, delivered a demand letter pursuant to 5 MRS §213, the Maine Unfair Trade Practices Act, to Rushmore.

52. The letter also served as a Qualified Written Request, Request for Information, and Notice of Error under the Real Estate Settlement Procedures Act 12 CFR §1024.33 & 34 outlining Rushmore's violations in delivering letters and account statements alleging past and monthly amounts due on the loan to Ms. Joy.

53. Ms. Joy included the Consent Judgment with the letter.

54. In a letter dated May 17, 2016, Rushmore denied any error had been made on the account. Rushmore acknowledged the Consent Judgment and expiration of the redemption period. A true and accurate copy of the letter is attached hereto as Exhibit 11 and is incorporated by reference herein.

55. Rushmore also notified Ms. Joy the property had been sold to the Trust on January 29, 2016.

## FIRST CLAIM FOR RELIEF
### Violation 15 USC §1692 et seq.: Fair Debt Collection Practices Act

56. Plaintiff repeats and realleges and incorporates by reference all paragraphs above.

57. Defendant Rushmore violated the FDCPA. Defendant's violations include, but are not limited to, the following:

   a) The Defendant Rushmore violated 15 USC §1692d by engaging in conduct, the natural consequence of which was to harass, oppress or abuse Ms. Joy in connection with the collection of the mortgage debt by delivering notices to seek payment of monies not owed by her and misrepresentating the status of the debt due to the Consent Judgment and expiration of the redemption period which together released her from any and all personal liability on the Note. *See* Exhibits 2, 4-11;

   b) The Defendant violated 15 USC §1692e by using false, deceptive or misleading representations or means in connection with the collection of Ms. Joy's mortgage debt by delivering notices seeking payment of monies not owed by her and misrepresenting the status of the debt due to the Consent Judgment and expiration of

9

the redemption period which together released her from any and all personal liability on the Note. *See* Exhibits 2, 4-11;

c) The Defendant violated 15 USC §1692e(2)(A) by falsely representing the character, amount or legal status of the mortgage debt by delivering notices to seek payment of monies not owed and misrepresentating the status of the debt due to the Consent Judgment and expiration of the redemption period which together released her from any and all personal liability on the Note. *See* Exhibits 2, 4-11; and

d) The Defendant violated 15 USC §1692f by using unfair or unconscionable means to collect or attempt to collect on the mortgage debt by delivering notices to seek payment of monies not owed and misrepresentating the status of the debt due to the Consent Judgment and expiration of the redemption period which together released her from any and all personal liability on the Note. *See* Exhibits 2, 4-11

58. Defendant's acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

59. Defendant's conduct constitutes a pattern and practice of violation of the FDCPA.

60. Defendant's conduct caused emotional distress to Ms. Joy as outlined above.

61. As a result of the above violations of the FDCPA, the Defendant is liable to the Plaintiff for declaratory judgment that defendant's conduct violated the FDCPA, and Plaintiff's actual damages, which include damages for emotional distress, statutory damages, costs and attorney's fees and for such other and further relief as may be just and proper.

## SECOND CLAIM FOR RELIEF
**Violation 32 M.R.S.A. §11001 et seq.: Maine Fair Debt Collection Practices Act**

62. Plaintiff repeats and realleges and incorporates by reference all paragraphs above.

63. Defendant Rushmore violated the Maine FDCPA. Defendant's violations of the Maine FDCPA but are not limited to, the following:

   a) The Defendant violated 32 M.R.S.A. §11013(1) by engaging in conduct, the natural consequence of which was to harass, oppress or abuse Ms. Joy in connection with the collection of the mortgage debt by delivering notices to seek payment of monies not owed and misrepresenting the status of the debt due to the Consent Judgment and expiration of the redemption period which together released her from any and all personal liability on the Note. *See* Exhibits 2, 4-11;

   b) The Defendant violated 32 M.R.S.A. §11013(2) by using false, deceptive or misleading representations or means in connection with the collection of Ms. Joy's mortgage debt by delivering notices to seek payment of monies not owed and misrepresenting the status of the debt due to the Consent Judgment and expiration of the redemption period which together released her from any and all personal liability on the Note. *See* Exhibits 2, 4-11;

   c) The Defendant violated 32 M.R.S.A. §11013(2)(B) by falsely representing the character, amount or legal status of the mortgage debt by delivering notices to seek payment of monies not owed and misrepresenting the status of the debt due to the Consent Judgment and expiration of the redemption period which together released her from any and all personal liability on the Note. *See* Exhibits 2, 4-11;

   d) The Defendant violated 32 M.R.S.A. §11013(3) by using unfair or unconscionable means to collect or attempt to collect on the mortgage debt by delivering notices to seek payment of monies not owed and misrepresenting the status of the debt due

to the Consent Judgment and expiration of the redemption period which together released her from any and all personal liability on the Note. *See* Exhibits 2, 4-11;

64. Defendant's acts as described above were done intentionally with the purpose of coercing Plaintiffs to pay the alleged debt.

65. Defendant's acts caused Ms. Joy emotional distress as described above.

66. As a result of the above violations of the Maine FDCPA, the Defendant is liable to the Plaintiff for injunctive and declaratory relief and for actual damages, which includes damages for emotional distress, statutory damages, attorney's fees and costs and for such other and further relief as may be just and proper.

### THIRD CLAIM FOR RELIEF
### Illegal, Fraudulent or Unconscionable Conduct In Attempted Collection Of Debts In Violation of the Maine Consumer Credit Code 9-A M.R.S. §9-403(G)

67. Plaintiff repeats and realleges and incorporates by reference all paragraphs above.

68. By communications listed above, attempting to collect on the mortgaged debt from the Plaintiff, Rushmore claimed a right and attempted to enforce a right that it had relinquished pursuant to an agreed order entered by the Maine District Court in the matter of *Beneficial Maine Inc. v. Roxanne Joy,* RE-13-301 (Me. Dist. Ct., Springvale, (June 16, 2015). *See* Exhibits 1, 2, 4-11 The Court ordered the foreclosure judgment to be satisfied by the sale of the property and that Plaintiff "no write of execution for any deficiency shall issue against Roxanne Joy." Exhbit 1 .

69. As such, Ms. Joy did not personally owe any money on the loan.

70. None of the parties appealed the Order. Exhibit 1.

71. Consequently the right to collect any balances alleged owed or connected to the mortgage loan has been barred by a final order of the court.

72. Rushmore thereby violated the Maine Consumer Credit Code (MCCC), 9-A M.R.S. §9-403(G).

73. The Plaintiff is entitled to actual, including emotional distress, damages, statutory damages, their attorneys' fees and costs, and such other relief the Court does deem just, equitable and proper.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands trial by jury in this action.

Respectfully submitted this 24th day of May, 2016.

__/s/ Andrea Bopp Stark, Esq._____
Andrea Bopp Stark, Esq.,

**MOLLEUR LAW OFFICE**
419 Alfred St.
Biddeford, ME 04005
207-283-3777
andrea@molleurlaw.com


Gary Goldberg, Esquire

**TERRY GARMEY & ASSOCIATES**
482 Congress Street, Suite 402
Portland, ME 04101-3424
(207) 899-4644 ext 2336
ggoldberg@garmeylaw.com |