UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ROXANNE JOY,<br><br>    Plaintiff,<br>v.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES,<br><br>    Defendant. | CIVIL NO. 2:16-cv-262-NT |

**DEFENDANT RUSHMORE LOAN MANAGEMENT SERVICES
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Rushmore Loan Management Services ("Rushmore"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 56 and Local Rule 56, hereby opposes Plaintiff Roxanne Joy's ("Joy") motion for summary judgment filed March 22, 2017 (the "Motion") (D.E. 25).

    **I.    INTRODUCTION**

The Motion is deficient for several reasons and should be denied.  In general, the Motion wrongly relies on the District Court's recent decision in *Kowalksi v. Seterus, Inc.* (Woodcock, J.) to make the case Joy is entitled to judgment as a matter of law.  This plainly mistakes the import of *Kowalski* which supports the notion that Joy stated a plausible FDCPA claim, but goes no further.  The Motion makes no attempt to engage in an analysis as to whether a violation occurred in view of applicable legal standards.

Specifically, Joy fails to satisfy her burden in proving the essential elements of an FDCPA claim.  First, Joy offers no record evidence that Rushmore regularly is engaged in debt collection activity.  Joy makes a conclusory assertion which Rushmore challenged in answering

the complaint.  This warrants a denial of the Motion on its own.  Second, the correspondence issued related to loan servicing information is not related to debt collection activity and cannot be used to sustain a violation as a matter of law.  Third, Joy fails to attempt – let alone establish – with record evidence that a violation occurred.  Joy must apply undisputed record evidence against the hypothetical unsophisticated consumer standard.  The Motion leaves this out and Joy is prohibited from offering it for the first time in a reply brief.

A closer look into the alleged violations reveals no violations at all.  The record is devoid of any conduct which could be construed as harassment or abuse.  In fact, Courts have determined that mortgage statements cannot rise to the level of harassment or abuse.  In addition, the fact Joy – who negotiated the Consented Judgment with deficiency waiver on her own – knew that she did not actually owe any money is fatal to her claim for violations on the basis of false or misleading representations or unconscionable behavior.  In sum, the Motion presents a series of conclusory assertions without proof of a violation.  At a minimum, these are triable issues and summary judgment must be denied.

Notwithstanding Joy's failure of proof, Rushmore testified to its obligation for issuing the correspondence.  Rushmore's obligation can be traced to an advisory opinion from the Consumer Financial Protection Bureau which provides that loan servicers should be sending such correspondence regardless of "collection status."  The FDCPA insulates debt collectors from liability for adhering to these advisory opinions in good faith.  Rushmore must be afforded the opportunity to present this defense to the factfinder which precludes summary judgment.

## II.     FACTUAL BACKGROUND

In June 2015, Joy negotiated a Consented Judgment for Foreclosure with Beneficial Maine, Inc., the mortgagee on her loan.  Defendant's Opposing Statement of Material Facts ("DOSMF") ¶ 5.  Joy negotiated the Consented Judgment on her own including the extended 135-day redemption period and deficiency waiver.  *Id.*

In October 2015, Rushmore became the loan servicer.  DOSMF ¶ 6.  Rushmore does not regularly become a loan servicer for loans which are already in default.  DOSMF ¶ 10.  Between October 2015 and January 2016, Rushmore issued ten pieces of correspondence to Joy.  DOSMF ¶¶ 17-26.  The correspondence relates to servicing information, loss mitigation, and account information.  *Id.*  Rushmore testified to its belief that it had an obligation to send out these letters which were for informational purposes.  *Id.*

Between October 2015 and January 2016, Joy never contacted Rushmore in response to any of the correspondence.  *Id.*  This, even though Joy testified that she didn't understand why she was receiving correspondence in view of the deficiency waiver.  *Id.*  Each piece of correspondence includes contact information for Rushmore for a borrower to call if they have questions.  *Id.*  In particular, the account information or mortgage statements contain the language "IF YOU ARE IN FORECLOSURE…To obtain the most up-to-date amount due information, please contact us at the number listed on this statement."  Rushmore was not notified of any problem concerning the correspondence until at least February 2016.

## III.     STANDARD OF REVIEW

The party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could

resolve the point in favor of the non-moving party." *Thompson v. Coca-Cola, Co.*, 522 F.3d 168, 175 (1st Cir. 2008). "A fact is material if it can impact the outcome of the case." *Johnson v. Univ. of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013). "A court review the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor." *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015).

Application of this standard demonstrates that Joy's motion for summary judgment must be denied.

### IV. ARGUMENT

For a plaintiff to prevail on an FDCPA claim, she must prove: (1) she was the object of collection activity arising from consumer debt; (2) the defendant is a debt collector within the meaning of the statute; and (3) the defendant engaged in a prohibited act or omission under the FDCPA. *Poulin v. The Thomas Agency*, 760 F. Supp.2d 151, 158 (D. Me. 2011). The Maine Fair Debt Collection Practices Act ("MFDCPA") is analogous to the FDCPA and, thus, the analysis applies equally to both claims. *Kowalski v. Seterus, Inc.*, 2017 WL 79949, *9 (D. Me. Jan. 9, 2017).

#### A. Joy Has Failed To Prove That Rushmore Is A Debt Collector.

As a threshold matter, Joy has failed to meet her burden to demonstrate that the FDCPA or MDCPA is applicable because the record is insufficient to establish that Rushmore is a "debt collector." *Stine v. Bank of America, N.A.*, 2016 WL 5135607, *3 (D. Me. Sep. 21, 2016) ("to establish an individual defendant's liability for FDCPA purposes, a plaintiff must first establish that the defendant is a 'debt collector.'"). On this basis alone, summary judgment must be denied.

11698928.1

A "debt collector" is defined as any person in any business the "principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be or due another." 15 U.S.C. § 1692(a)(6). Joy does not argue or support with record evidence that Rushmore's principal purpose is the collection of debts. Mot. at 3-11. Likewise, Joy does not argue or support with record evidence that Rushmore regularly collects debts due to others. Mot. at 3-11. Rather, in conclusory fashion, Joy pronounces that Rushmore is a "debt collector" on the heels of two facts: (1) it serviced the loan on behalf of another entity; and (2) the loan was in default at the time it acquired servicing rights. Mot. at 3-4. Even if credited, these facts are not enough to trigger summary judgment because there is no record evidence that Rushmore "regularly" collects debts due to others – which in the mortgage servicing context means that Rushmore "regularly" services loans which it acquired *after* default.

Loan servicers, such as Rushmore, are generally not considered "debt collectors" for purposes of the FDCPA or MDCPA unless they begin servicing after default. *See e.g. Faiella v. Green Tree Servicing, LLC*, 2017 WL 589096, *5 (D. N.H. Feb. 14, 2017) (debt collector does not include a mortgage servicing company); *Doyle v. HSBC Bank, N.A.*, 2011 WL 4073168 (CUM-09-678, Jun. 15, 2011) (Mills, J.) (dismissing a MDCPA claim holding that a loan servicer is not a "debt collector" after observing the "overwhelming majority of cases demonstrate that a loan servicer is not a 'debt collector" under the FDCPA), *Cota v. U.S. Bank, N.A., et al.*, 2016 WL 922784 (D. Me. Mar. 10, 2016) (Singal, J.) citing *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012). In *Bridge*, the Sixth Circuit made clear that "one cannot be both a 'creditor' and 'debt collector,' as defined in the FDCPA because those terms are mutually exclusive." *Id.* The Sixth Circuit explained:

> For an entity that did not originate the debt in question but acquired it and attempts to collect on it, **that entity is either a creditor or debt collector depending on the default status of the debt at the time it was acquired**. The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred.

*Id.* (emphasis added.). This distinction is critical because Rushmore cannot be considered to be engaged in debt collection activity under the FDCPA with respect to servicing loans which it acquired *before* default. Such conduct does not fall within the ambit of the statute. Put differently, Rushmore can only be said to be engaged in debt collection activity under the FDCPA for servicing loans which it acquired *after* default.

Joy must therefore prove that Rushmore "regularly" collects debts which it acquired *after* default in order for Rushmore to be considered a "debt collector."[1] *See Oppong v. First Union Mortgage Corp.*, 407 F. Supp.2d 658, 662-66 (E.D. Pa. 2005) (setting forth two approaches for determining whether an entity is "regularly" engaged in debt collection activity and holding Wells Fargo qualified as a "debt collector" based on the acquisition of 89 delinquent loans over a three-month period). For purposes of its opposition to partial summary judgment, Rushmore need not address whether this Court should adopt the "frequency approach" or the "aggregate approach" in determining whether Rushmore is "regularly" engaged in debt collection activity.[2] This burden belongs to Joy which she does not even attempt to satisfy. The burden also belongs to Joy to employ the correct approach with undisputed facts in this case to prove that Rushmore is "regularly" engaged in debt collection activity. As noted, Joy argues in conclusory fashion

---

[1] As noted above, Joy does not argue that Rushmore's principal purpose is to collect debts owed to others. Therefore, Joy must establish that there is no genuine dispute of material fact that Rushmore regularly collects or services mortgage loans which it acquired after default.
[2] Rushmore reserves the right to fully brief the issue of whether this Court should adopt the "frequency" or "aggregate" approach prior to trial.

6

that Rushmore is a "debt collector," which Rushmore denies. DOSMF ¶ 10. Joy has not put forward record evidence as to the number of loans that Rushmore services in Maine, or elsewhere. Joy has not put forward record evidence as to the number of loans that Rushmore services in Maine, or elsewhere that it acquired *after* default. At a minimum, Joy must establish these baseline facts to allow the Court to analyze whether it "regularly" operates as a "debt collector." There being no such evidence in the record it is fatal to the Motion and summary judgment must be denied.

      **B.**    **The Correspondence Concerning The Service Transfer & Service Information Do Not Qualify As Debt Collection Activity As A Matter Of Law.**

The Motion cites periodic correspondence from Rushmore to Joy between October 2015 and January 2016 as her basis for the argument that Rushmore was engaged in debt collection activity. Two of ten pieces of correspondence relied upon by Joy concern servicing information and, therefore, do not constitute debt collection activity as a matter of law. These include: (1) October 23 letter regarding service transfer (DOSMF ¶ 19) and (2) November 13 letter regarding servicing information (DOSMF ¶ 21).

In *Kowalski*, this Court observed that the First Circuit has not elaborated on this prong of the FDCPA analysis – that is whether the alleged activity is in connection with the collection any debt. 2017 WL 79949 at *12. *Kowalski* looked to the Seventh Circuit which articulated three relevant factors: (1) whether the communication demanded payment; (2) the nature of the parties' relationship; and (3) the objective purpose and context of the communication. *Id.*, citing *Gburek v. Litton Loan Servicing, LP*, 614 F.3d 380, 384-85 (7th Cir. 2010).

Courts have applied the *Gburek* test to correspondence regarding servicing information and have held that it is not "in connection with the collection of any debt." *O'Connell v.*

*Bayview Loan Servicing, LLC*, 2016 WL 1069079, *3 (E.D. Wis. Mar. 17, 2016); *Shelley v. Ocwen Loan Servicing, LLC*, 2013 WL 4584649 (S.D. Ind. Aug. 28, 2013) (holding that a RESPA servicing transfer notification was not made in connection with the collection of a debt); *Parker v. Midland Credit Management, Inc.*, 874 F. Supp.2d 1353, 1358 (M.D. Fla. 2012) (holding that letter notifying borrower of new owner of loan was not made in connection with the collection of debt); *see also Thompson v. BAC Home Loans Servicing, L.P.*, 2010 WL 1286747, *4 (N.D. Ind. Mar. 26, 2010) (decided before *Gburek* holding that a notice providing information about a new servicer sent to borrower on a defaulted loan was not in connection with a debt).  In *O'Connell*, the loan servicer sent a welcome letter to inform the borrower it was now servicing the loan in accordance with RESPA.  2016 WL 1069079 at *3.  In rejecting the borrower's argument that the letter was sent in connection with the collection of a debt because the foreclosure was nearly complete and the redemption period expired, the Court reasoned that "RESPA makes no distinction between loans in good standing, defaulted loans, or uncollectable loans; the RESPA change in servicer notifications are required regardless." *Id.*  Further, the Court reasoned that it was an "impersonal form letter" which was not tailored to the borrower's personal circumstances and did not demand personal information to assist the borrower in avoiding foreclosure.  *Id.*

The October 23 and November 13 letters both relate to servicing and cannot be considered to trigger FDCPA protections as a matter of law.  The October 23 letter, like in *O'Connell*, is required by RESPA.  It also does not demand payment.  It merely states "your loan was recently transferred to Rushmore Loan Management Services."  DOSMF ¶ 19.  The letter includes no account information whatsoever and cannot be objectively viewed as having a debt collection purpose.  The November 13 letter compels the same conclusion.  DOSMF ¶ 21.  It

8

states the "purpose of this communication is to provide you with general information about how your loan will be serviced." It does not demand payment or provide any account details or information specific to Joy. The purpose of the November 13 letter is clear on its face – to provide servicing information only. In sum, the October 23 and November 13 letters are not in connection with the collection of a debt. These cannot form the basis for an FDCPA violation as a matter of law.

### C. Joy Has Not Demonstrated Rushmore Committed An FDCPA Violation.

Notwithstanding the preceding arguments, the Motion must also be denied because Joy has not proven Rushmore committed a violation. Once again, the Motion skips over analysis in lieu of conclusory arguments that the correspondence must be deemed a violation because the Consented Judgment was in place.

Rushmore sent the following correspondence to Joy: (1) October 16 mortgage statement (DOSMF ¶ 17); (2) October 20 letter regarding loss mitigation (DOSMF ¶ 18); (3) October 23 letter regarding service transfer (DOSMF ¶ 19); (4) October 28 mortgage statement (DOSMF ¶ 20); (5) November 13 letter providing servicing information (DOSMF ¶ 21); (6) November 28 mortgage statement (DOSMF ¶ 22): (7) December 3 letter regarding loss mitigation (DOSMF ¶ 23); (8) December 14 mortgage statement (DOSMF ¶ 24); (9) December 22 letter regarding loss mitigation (DOSMF ¶ 25); and (10) January 28 mortgage statement (DOSMF ¶ 26).

The correspondence can be separated into three groups – servicing information, loss mitigation information, and mortgage statements. As explained above, the correspondence related to servicing information is not in connection with debt collection activity, as a matter of law. Although Rushmore concedes that the latter two groups might be considered in connection with debt collection activity, triable issues exist as to whether Rushmore committed a violation.

9

In determining whether a communication has violated the FDCPA, the communication "is to be viewed from the perspective of the hypothetical unsophisticated consumer." *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014). "The standard remains an objective one, which preserves an element of reasonableness." *Id.* at 104. "A debt collector will not be held liable based on an individual consumer's chimerical or farfetched reading of a collection letter." *Id.*

### 1. Rushmore Did Not Engage In Activity To Harass, Oppress Or Abuse Joy.

Joy argues that all of Rushmore's correspondence violates the FDCPA's prohibition to "harass, oppress, or abuse." Mot. at 7. Joy, however, provides no legal authority in support of the view that loss mitigation letters or mortgage statements can be construed to "harass, oppress, or abuse." Mot. at 7. Joy also fails to conclusively demonstrate that the correspondence at issue amounts to a violation from the perspective of the hypothetical unsophisticated consumer. Rather, Joy seems to conclude the correspondence constitutes a violation simply because Joy's rights in the property had been extinguished. Mot. at 7. Joy is incorrect.

15 U.S.C. § 1692d lists the following conduct as a violation: (1) the use or threat of violence; (2) the use of obscene or profane language; (3) the publication of a list of consumers who allegedly refuse to pay debts; (4) the advertisement for sale of debt to coerce payment; and (5) multiple telephone calls. Absent from this list, which admittedly is non-exhaustive, is sending correspondence such as loss mitigation information letters or monthly mortgage statements. Indeed, courts have dismissed FDCPA claims alleging harassment or abuse based upon receiving such letters. *See e.g. Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F. Supp.3d 1294, 1304-05 (M.D. Fla. 2016). In *Leahy-Fernandez*, the plaintiff argued that a series of monthly mortgage statements which Bayview issued after a Chapter 13 bankruptcy discharge

amounted to harassment or abuse. *Id.* at 1299. The Court dismissed the FDCPA claim to the extent it was premised on harassment or abuse reasoning that Bayview used a "minimally intrusive means of communication" and "did not threaten" the plaintiff.

There is no record evidence that Rushmore acted in any manner which could be construed as harassment or abuse within the meaning of § 1692d. As in *Leahy-Fernandez*, Joy's argument that periodic correspondence – a total of ten letters over a four month span – amounts to harassing behavior should be rejected outright. Rushmore's correspondence was presented in standard formats for loss mitigation information and mortgage statements. There is no record evidence, let alone any allegation, that Rushmore acted in a harassing or abusive manner save for Joy's conclusory assertions. At a minimum, a triable issue exists as to whether the correspondence is a violation of § 1692d from the perspective of the hypothetical unsophisticated consumer.

> 2. *Triable Issues Exist As To Whether Rushmore Is In Violation Of The Prohibition Against False, Deceptive or Misleading Representations.*

Joy next argues that the four mortgage statements are a violation of § 1692e which prohibits a debt collector from using "any false, deceptive or misleading representation or means in connection with the collection of any debt." Mot. at 8-9. Joy contends the mortgage statements are a violation because after the Consented Judgment had entered Rushmore had "no ongoing right to demand payment." Mot. at 8. Following the same pattern, Joy offers no legal authority to prove that mortgage statements issued after a consented judgment with waiver of deficiency are false, deceptive or misleading within the meaning of the statute. Instead, Joy relies entirely on *Kowalski*. Mot. at 8. While *Kowalski* supports the proposition that Joy has stated a plausible FDCPA claim on the basis of the mortgage statements it goes no further. *Kowalski* does not evaluate mortgage statements in the summary judgment context from the

11698928.1

perspective of the hypothetical unsophisticated consumer or lay down a bright-line rule as to whether the mortgage statements at issue constitute a violation. Put simply, the fact the plaintiff in *Kowalski* survived a motion to dismiss does not translate into Joy proving a violation.

Courts have held that a plaintiff cannot sustain a claim for a § 1692e or § 1692f violation when the plaintiff is aware that he or she does not actually owe the debt. *See e.g. McDermott v. Randall S. Miller & Associates*, 835 F. Supp.2d 362, 372 (E.D. Mich. 2011). The plaintiff alleged that there was a violation for "false, deceptive or misleading representations" or "unconscionable means" to collect debts because the debt collector sent letters demanding payment when the debt did not belong to the plaintiff. *Id.* The Court held there is no § 1692e or § 1692f violation when the plaintiff "knew he did not actually owe the debt." The Court explained that the plaintiff could not satisfy the least sophisticated consumer test. *Id.*[3]

The record demonstrates that Joy understood she did not actually owe the debt at issue and, thus, Joy cannot sustain an FDCPA claim based upon a § 1692e or § 1692f violation. When asked about the Consented Judgment, Joy testified that she negotiated it herself. DOSMF ¶ 5. Joy negotiated an extended redemption period and understood that she could remain in the property for 135 days. DOSMF ¶ 5. Significantly, when asked if she negotiated "that there would be no deficiency after the foreclosure process," Joy answered "yes." DOSMF ¶ 5. In connection with receiving correspondence from Rushmore, Joy further testified "I did a deficiency of waiver…I don't understand why I keep getting these letter saying I owe money." DOSMF ¶¶ 17-26. Joy's testimony conclusively establishes that she understood she did not actually owe the debt which appeared on the Rushmore mortgage statements. As in *McDermott*, Joy is unable to satisfy the hypothetical unsophisticated consumer test in order to prove an

---

[3] The least sophisticated consumer test is substantively the same as the unsophisticated consumer test. *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d at 103, fn. 4.

FDCPA claim grounded in allegations of false, deceptive or misleading representations (§ 1692e) or unconscionable means (§ 1692f). At the very least, triable issues exist which are reserved for the factfinder and summary judgment must be denied.

### 3. *Rushmore Did Not Use Unfair or Unconscionable Means.*

Joy lastly makes the argument that Rushmore's correspondence equates to using "unfair or unconscionable means" to collect a debt in violation of § 1692f. Mot. at 10-11. Joy offers nothing more than in her previous arguments. There is complete reliance upon *Kowalski* which, as noted above, only supports the view that Joy has stated a plausible claim for relief. Otherwise, Joy does not prove that a violation of § 1692f.[4]

§ 1692f provide a list of unfair practices, albeit not exhaustive, which constitutes a violation. These range from acceptance of a postdated check to threatening to communicate with a consumer about a debt by postcard. *Id.* at § 1692f(3)&(7). A review of § 1692f reveals the conduct complained of by Joy – issuing loss mitigation letters and mortgage statements – is not contemplated. § 1692f(1) prohibits collection of any amounts "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." There is no dispute that subject mortgage authorized the collection of amounts owed. Further, the record is devoid of Rushmore taking any threatening action. Put simply, the conduct of issuing correspondence is wholly inconsistent with the statutory prohibitions. At a minimum, whether a violation occurred must be resolved at trial and summary judgment should be denied.

---

[4] Rushmore incorporates by reference herein its previous argument that a § 1692f violation did not occur because Joy knew she did not actually owe the debt appearing in the correspondence and cannot satisfy the hypothetical unsophisticated consumer standard.

### E. Rushmore Relied Upon A CFPB Advisory Opinion To Send The Correspondence Regardless Of Collection Status.

Even if a trier of fact resolves the disputed issues in Joy's favor, Rushmore cannot be held liable because it was sending correspondence to Joy in reliance upon an advisory opinion from the Consumer Financial Protection Bureau ("CFPB"). Rushmore testified that it had an "obligation to send out the request for – or the notices of information that I mentioned in all these documents until such a time where Ms. Joy is no longer the owner of the property." DOSMF ¶¶ 17-26.

15 U.S.C. § 1692k(e) provides that no provision of the FDCPA imposing liability "shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Commission, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason." Pursuant to § 1692k(e), the CFPB issued an opinion relating to borrowers prohibiting debt collectors from communicating with them. Implementation Guidance for Certain Mortgage Servicing Rules, 2013 WL 9001249 at 3 (C.F.P.B. Oct. 15, 2013) ("CFPB Guide"). The CFPB Guide advised that a loan servicer which is considered a debt collector under the FDCPA shall still send a borrower loss mitigation notices (12 C.F.R. § 1024.41) and periodic billing statements (12 C.F.R. § 1026.41) after receiving a cease communication instruction. *Id.* The CFPB Guide concluded that a loan servicer acting as a debt collector would not be liable for complying with these requirements. Lastly, the CFPB Guide explained it "believes that these notices provide useful information to consumers regardless of their collection status." *Id.*

Courts have interpreted the CFPB Guide and held that sending periodic statements or mortgage statements is not a violation of the FDCPA. *Brown v. Select Portfolio Servicing, Inc.*, 2017 WL 1157253, **3-4 (S.D. Fla. Mar. 24, 2017); *Hill v. DLJ Mortgage Capital, Inc.*, 2016

WL 5818540, *8 (E.D. N.Y. Sep. 30, 2016) (holding plaintiff cannot state a claim under the FDCPA with respect to "periodic mortgage statements"). In *Brown*, the plaintiff argued that mortgage statements sent to the borrower *after* a foreclosure judgment violated the FDCPA. 2017 WL 1157253 at *2. The loan servicer argued that the CFPB Guide advised that sending the mortgage statements did not constitute debt collection in violation of the FDCPA. *Id.* In dismissing the FDCPA claim, the Court explained that the CFPB's interpretation of Regulation Z (§1026.41) "has not been found invalid, there is no reason for the Court to question that interpretation." *Id.* at *4.

As in *Brown* and *Hill*, Rushmore reasonably relied upon the CFPB Guide in sending the correspondence including loss mitigation information and mortgage statements to Joy. Like *Brown*, Rushmore issued correspondence after foreclosure judgment. Further, the CFPB Guide expressly provides that "notices provide useful information to consumers regardless of their collections status." Rushmore testified it was obligated to issue the correspondence. DOSMF ¶¶ 17-26. There is no record evidence that Rushmore failed to act in good faith in this regard.

Joy may argue that § 1692k(e) is not available to Rushmore in view of *Kowalski*. This wrongly interprets § 1692k(e) and *Kowalski*. In *Kowalski*, this Court determined that the defendant loan servicer, Seterus, Inc., could not defend sending mortgage statements based upon Regulation Z because Kowalski was no longer an obligor on the loan. 2017 WL 79949. *Kowalski* has no import here. Section 1692k(e) is not a defense grounded in Regulation Z, but strictly in the language of the advisory opinion itself. § 1692k(e) provides Rushmore with a defense to liability based on the language of the CFPB Guide – it does not require Rushmore to buttress its reliance with its own interpretation of the underlying law or regulation, in this case Regulation Z. Whether Rushmore is protected from liability under the FDCPA is an issue of fact

as to whether Rushmore was acting in good faith compliance with the CFPB Guide language, nothing else.  The CFPB Guide expressly states that a loan servicer acting as a debt collector is to continue issuing the required notices (including loss mitigation information and periodic statements) regardless of collection status.[5]

      **F.**      **Maine Consumer Credit Code.**

Joy argues that Rushmore violated the Maine Consumer Credit Code's provision for the same reasons she argues that Rushmore violated the FDCPA.  Mot. at 11-12.  Joy contends that Rushmore had no right to demand payment after entry of the Consent Judgment.  Mot. at 11.  Based on the arguments raised above which are expressly incorporated by reference herein, including that Joy has failed to prove that Rushmore is a debt collector or that Rushmore committed a violation of the FDCPA, summary judgment on the Maine Consumer Credit Code must be denied.

---

[5] Rushmore expressly reserves its right to raise a defense at trial under 15 U.S.C. § 1692k(c).

## V. CONCLUSION

Summary judgment must be denied on this record. Joy has failed to satisfy her burden to prove all of the elements of the FDCPA claim.

Dated: April 14, 2017

Respectfully submitted,

/s/ Adam J. Shub
Adam J. Shub, Esq., Bar No. 4708
*Attorney for Defendant*
Rushmore Loan Management Services

PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
(207) 791-3000
ashub@preti.com

### Certificate of Service

I, Adam J. Shub, hereby certify that service of the above has been made through the Court's ECF system on all those registered to receive ECF service. The document filed is available for viewing and downloading from the ECF system.

date:   4/14/2017                                      /s/Adam J. Shub

11698928.1